bert, 124 N. Y. 612, 27 N. E. 391. The language of the provisions of the Code is clear. It admits of but one interpretation. That has been fully expressed in the case referred to. The policy of the law is to give the creditor the preference to which his diligence entitles him. It was held in Gillig v. Treadwell Co., 148 N. Y. 177, 42 N. E. 590, that when two or more warrants of attachment against the same defendant are delivered to the sheriff of the same county, and he makes a partial but insufficient levy under the one first delivered to him, and levies the junior warrant upon other and separate property, the levy made under the junior warrant will, after judgment, inure to the benefit of the judgment creditor whose warrant was first delivered to the sheriff. When the sheriff made the levy under the Willover execution, and took possession of the property, the receiver, who was subsequently appointed, had no right to it. It was the duty of the officer to have retained possession of the property, and to have sold it to satisfy the execution. He should have taken all reasonable means to have protected his levy. The lien of the execution, therefore, was not destroyed by the appointment of the receiver, and Willover is entitled to have it satisfied out of the proceeds arising from the sale of the property. It was held in Re Muehlfeld & Haynes Piano Co. (Sup.) 42 N. Y. Supp. 802, that a lien on property which the sheriff has taken under an execution against a corporation is not devested by the subsequent appointment of a receiver, and a petition for the voluntary dissolution of the company, although the petition was filed before the entry of the judgment against the corporation. The court held that the property of the defendant corporation was bound by the execution from the time it was delivered to the sheriff to be executed. Code Civ. Proc. § 1405. All that was necessary to complete the lien was that the sheriff should make an actual levy during the life of the execution. Hathaway v. Howell, 54 N. Y. 97. The rule is that, when property delivered by the sheriff to a receiver shall have been sold by him, the proceeds thereof shall be set apart to apply to the judgment of the executions in the order of their priority.

The report of the referee, therefore, should be modified so as to require the receiver to pay the Willover judgment first.

---

(20 App. Div. 104.)

DUNDEE NAT. BANK v. HUNTINGTON.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

BANKS AND BANKING—PAYMENT—WHAT CONSTITUTES.

> The president of a bank that held defendant's note owed defendant about the amount of the note, on his individual mortgage. He and defendant had considerable correspondence about the matter, and finally he agreed to take up the note in consideration of defendant's discharging the mortgage. Pursuant thereto, defendant sent a satisfaction of the mortgage to the president, and the latter sent defendant his individual check for the difference between the amount of the note and the amount of the mortgage. The president took out defendant's note, but substituted therefor a forged renewal note purporting to be signed by defendant. Subsequently the cashier of the bank pressed defendant for payment of the note, and defendant did not claim that

it was paid by the mortgage transaction with the president, and paid little attention to the cashier's letters. The bank had never held the mortgage to defendant as collateral for the payment of his note, and knew nothing of the transaction between defendant and its president. *Held*, that the mortgage transaction did not constitute a payment of the note.

Appeal from judgment on report of referee.

Action by the Dundee National Bank against Henry M. Huntington on a note. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

H. C. Harpending, for appellant.
D. A. Marsh, for respondent.

HARDIN, P. J.    Prior to the 6th day of June, 1892, the defendant secured from the plaintiff a loan of $1,000, and he gave his promissory note therefor.    On the 6th day of June he renewed the note, and included in the renewal a small balance of indebtedness to the bank, delivering to the bank simultaneously with the renewal his promissory note for $1,137.44, which was made payable to the plaintiff; being nonnegotiable, and maturing April 1, 1893.    That note was never in fact paid to the bank, nor the indebtedness secured thereby repaid to the bank.    It is found by the referee that the note "was taken from the bank by James Spicer, who was at that time president of the bank, which fact was made known to the defendant by the said Spicer; that the said Spicer deposited with the said bank another note purporting to have been signed by defendant, for $1,300, dated May 1, 1895, running for one year, payable to the plaintiff, with interest, the avails of which note were credited to the defendant, and canceled upon the books of the bank the obligation previously held against him; that the $1,300 note was not the genuine note of the defendant, his signature being placed thereon by some other person." The defendant resided in Huntley, Minn.    According to the defendant's testimony, he, some time in 1893, wrote to Mr. Spicer, and asked him to send the note and balance due.    In response to that letter, Mr. Spicer wrote to the defendant a letter on the 18th of March, 1893, referring to the note held by the bank, of $1,137.44.    At that time the defendant, as executor of his brother's estate, held a mortgage upon certain real estate executed by Mr. Spicer; and, in the letter alluded to, Spicer stated, viz.:

"I have taken the note from the bank, and I hold it to pay the amount due on the mortgage.  The amount due on note April 4th is $1,193.94.  If you send on the discharge, please get a clerk's certificate; and, upon arrival of same, will figure up difference and square up."

On the 17th of May, Spicer again wrote to the defendant, in which he made a statement showing that there was due upon the note $1,193.94, and the amount due on the "bond" was $1,299.75, and the balance was $105.81; and in that letter he included a check for $105.81, and stated, viz.: "I will keep the papers altogether, and when you come down we will look them over, and any mistakes cor-

rected." The defendant about the 20th day of March, 1893, executed a discharge of the mortgage, and mailed the same to Spicer, at Dundee; and the referee finds as a fact:

"That said discharge was given to the said Spicer upon the understanding upon the part of the defendant that the avails of the mortgage should be applied towards the payment of the defendant's indebtedness to the bank; that after receiving the said discharge the said Spicer sent to the said defendant, in Minnesota, a statement purporting to show the application of the avails of the bond and mortgage towards the payment of the defendant's indebtedness; that from such statement it appeared that the defendant's note of $1,137.44, and the interest thereon, had been paid, and that after applying the avails of the bond and mortgage thereon there remained due the defendant $105.81, for which sum the said Spicer sent his individual check, which, in due course of mail, was returned to Dundee, and was paid out of the individual account of the said Spicer in the bank."

There was evidence given on the trial tending to support the findings of fact, so far as we have quoted the same. The referee also found:

"That the Spicer bond and mortgage were not left with the plaintiff at any time as collateral security for the payment of the note, or of any indebtedness of the defendant in the bank."

That finding is challenged by the defendant. Mr. Shattuck, the cashier of the plaintiff, in the course of his redirect examination testified, "The bank had no mortgage as collateral to the payment of this note." When the defendant was cross-examined, he testified, after referring to the mortgage, "It was never put up in the bank as collateral, and never assigned to the bank." The evidence of Shattuck and of the defendant amply supports the finding made by the referee, that the "bond and mortgage were not left with the plaintiff at any time as collateral security for the payment of the note, or of any indebtedness of the defendant in the bank."

The referee has found as a fact:

"That said note of $1,137.44 was not paid by the defendant, or by any person in his behalf, to the plaintiff, and the money for which the same was given is still due and owing to the plaintiff."

The evidence abundantly supports that finding of fact. During the examination of Huntington, he said:

"The Spicer mortgage was paid by installments. I remember of receiving at one time $500 and $250. I said the other day that I had no recollection of sending a discharge in response to his letter. I don't now recollect anything of the kind. Am positive I did not. I wrote then to him to send the necessary papers, and he never did."

Subsequently the witness was confronted with the discharge papers executed by him as executor of his deceased brother, bearing date March 20, 1893, which had been recorded in the clerk's office of Yates county. On the 26th of July, 1894, Shattuck, the cashier of the bank, wrote to the defendant a letter in which he stated:

"Your note of $1,137.44 and interest, amounting to $1,193.94 on April 1st, 1893, at its maturity, is still held by this bank and unpaid. I have several times in the past called Mr. Spicer's attention to it, and suggested that he had better ask you to renew it, if you were not in shape to pay it, and thus save our carrying it as a past-due paper, which looks objectionable in the eye of the government."

Subsequently, and on the 6th of August, the cashier addressed another letter to the defendant, in which he stated:

"The note in question you gave to the bank June 6th, 1892, for $1,137.44 and interest, payable April 1st, 1893. Amount at maturity, $1,193.94. Mr. W. S. Booth and myself are two of the nine directors of the bank, Mr. Spicer being one. You know how he runs matters. Mr. B. and myself had half fancied that perhaps you had made some arrangement with Mr. S. whereby he was to provide for the payment of your note; and, while our suspicions may be unjust, we did not think his explanation of the matter, or his way of treating the note, hardly natural, and, at Mr. Booth's suggestion, I wrote to you regarding it. I also show him this letter to you."

On the 20th of October, 1894, the cashier again wrote to the defendant upon the subject of the unpaid note, and added a postscript in which he stated, viz.:

"Spicer said only two days ago, when looking over the notes, that he had just received a letter from you," etc., "and that it would soon be arranged."

We are of the opinion that the referee made no mistake in interpreting the evidence when he came to the conclusion that: the debt to the bank had never been paid, and that placing a forged note, in form renewing the defendant's note, did not operate to discharge the debt due from the defendant to the bank. Apparently the defendant understood that he was having a personal transaction with Spicer when he was negotiating with him for the collection of the mortgage, and the liquidation of the indebtedness represented by the note. The transaction is wholly unlike the one under consideration in Yerkes v. Bank, 69 N. Y. 383. In that case the defendant, the bank, had in its hands United States bonds, and the cashier, for a sufficient consideration, agreed to exchange the same for registered bonds. The bank neglected to execute the agreement, and the bonds were stolen, and it was held the defendant was liable. We think the case does not support the contention of the defendant. The transaction revealed in this case is quite unlike the one disclosed in Phillips v. Bank, 140 N. Y. 556, 35 N. E. 982. In that case the cashier of the bank, having power to bind it by his checks, for the purpose of converting its funds to his own use drew checks, as cashier, upon the defendant, with whom his bank had a deposit account, making them payable to persons who were dealers with the bank; and it was held "that, so far as defendant was concerned, the intent of the cashier was the intent of his bank." The transaction there under consideration does not resemble the one brought to our attention by the record here. We think the evidence warranted the referee in reaching the conclusion "that the transaction between the defendant and Spicer in regard to the discharge of the mortgage, and applying the avails of it to the payment of the indebtedness of the defendant in the bank, was one of a personal nature, and whatever was done in that regard by Spicer was apart from his relations as president of the bank." And this view of the case is corroborated and strengthened by the omission of the defendant to heed the letters of the cashier which were written, calling his attention to the fact that the note remained unsatisfied, and that it was held by the bank against the defendant; and the efforts of the cashier to secure from

the defendant the payment of the note, and the delay of the defendant in taking the position which he now seeks to insist upon, strongly indicate that the referee made no mistake in the interpretation of the whole volume of the evidence before him. We think his conclusion should be sustained.

Judgment affirmed, with costs. All concur.